McAdam, C. J.
—The defendant admitted upon the trial that it “authorized Dr. Field to make the contract which he did,” and this admission left but two questions for the jury to determine: (1) What contract did the doctor make with the plaintiff ? (2) Was the charge in conformity to it % The admission made it immaterial what the custom of the company was in regard to funerals, for it could not bind the plaintiff without notice, and no offer to prove notice was suggested, and also made it immaterial what price the doctor was in other cases authorized to put upon, a funeral. His power to make the contract with the plaint *650 iff being expressly admitted, it became unnecessary to go into proof of Ms authority or of any limitations upon it. The testimony offered at folios 95, 96 was, therefore, incompetent and properly excluded. The plaintiff testified that the doctor ordered him to give “a first class funeral,” and further on “a very handsome funeral.” The bill amounted to $385, and the plaintiff testified that this was a reasonable and fair charge, and the jury have so found. The term “first class funeral” or “very handsome funeral,” when applied to a particular individual, generally has reference to the previous social status and pecuniary condition of the person to be interred, for what might be considered extravagant in one case would be seemingly moderate in another. While $385 may, at first blush, seem large for an ordinary funeral, we cannot say that it was extravagantly large. The doctor swears that the parents of the child were apparently in “extreme destitution,” and that he told the undertaker to bury the child decently, not extravagantly, and to do it just as if he were doing it for the father of the child and intending him to pay for it. The undertaker denied that any such instruction was given to him, and the jury evidently believed his testimony. What kind of a funeral parents in extreme destitution, without money or credit, could give their child, beyond burial in a pauper’s grave, is difficult to imagine. The defendant evidently did not intend this. It was prompted by higher and more generous impulses and intended a proper and becoming funeral. The defendant, a responsible corporation, voluntarily became the employer and paymaster for the funeral which was conducted on its credit. TMs circumstance gave character and dignity to the affair, and as it was associated, to an extent at least, with the cause of the child’s death, the plaintiff had the right to look beyond the “extreme destitution” of the child’s parents into the source from which his pay was to emanate, and, having both considerations in mind, the plaintiff was to furnish such a funeral as might (everything considered) be moderately fair and reasonable. The claim was $385, the interest $74.50, aggregating $459.50. The jury deducted from this $131, and rendered their verdict for $328.50. This deduction shows that the jury examined the items of the bill with a view to allowing only what was regarded by them as moderate and fair. This modification makes the bill unobjectionable and the verdict upon the evidence is not excessive, but just. The jury had the right to allow the interest. The-plaintiff furnished a bill after the funeral and the defendant refused to pay it. Interest was properly chargeable from this time, because it then became the duty of the defendant to discharge the debt. Interest from that *651 time became a necessary incident, the natural growth of the money. Adams v. Fort Plain Bank, 36 N. Y., 255; Mygatt v. Wilcox, 45 id., 306. The defendant could have stopped the running of interest by tender of the amount due, but it made no tender. The other exceptions taken by the defendant are without significance or merit, and, as we have discovered no legal error to the defendant’s prejudice, the judgment appealed from must be affirmed with costs.
Nehrbas, J., concurs.